UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THOMAS E. PEREZ, | ) | |
| SECRETARY OF LABOR, | ) | FILE NO. _____ |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTICO FOODS, LLC, and | ) | |
| GIOVANNI DIPALMA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION
FOR A TEMPORARY RESTRAINING ORDER AND
ORDER FOR DEFENDANTS TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Thomas E. Perez, Secretary of Labor for the United States Department of Labor (hereinafter "the Secretary"), submits this memorandum of law in support of his Application for a Temporary Restraining Order enjoining Defendants Antico Foods, LLC (hereinafter "the Company") and Giovanni DiPalma from engaging in and threatening retaliation against the Company's current and former employees.  The Wage and Hour Division, United States Department of Labor (hereinafter "Wage and Hour"), is currently investigating Defendants to determine whether they are in compliance with the Fair Labor Standards Act of 1938, as amended (hereinafter "the FLSA"), 29 U.S.C. §§ 201 et. seq.  Defendant DiPalma has unlawfully interfered with this federal investigation in several ways.  He has intimidated, terminated, and threatened to terminate employees of the Company and threatened to call immigration authorities concerning employees believed to have cooperated in the Department of Labor investigation.  Such threats and actions plainly constitute unlawful retaliation under Section 15(a)(3) of the

FLSA, 29 U.S.C. § 215(a)(3).  The Secretary respectfully requests that Defendants be enjoined from threatening, retaliating against, and/or otherwise harming current and former employees of the Company in any manner.  The Secretary further requests that Defendants be required to allow a representative of the Secretary to inform the employees of their rights under the FLSA.

This request is urgent.  The Secretary's investigation and future enforcement action are threatened with irreparable harm if Defendants are allowed to continue to retaliate against the Company's employees through threats of termination and deportation for engaging in protected activities.  Such threats, if successful, will prevent witness participation not only in this investigation and enforcement action, but also in other cases by deterring other workers from exercising their right to communicate with the government without fear of retaliation. Defendants must be prevented from continuing such unlawful conduct lest their threats be carried out and employees either lose their livelihood or suffer other harm.

The public interest favors the enforcement of labor and employment laws to protect employees from violations of the fundamental, non-waivable protections of the FLSA.  The FLSA protects employees from violations of its minimum wage and overtime provisions and protects law-abiding employers from unfair competition from employers who fail to comply with the FLSA's requirements.  29 U.S.C. §§ 206, 207, 202(a).  These important public interests are served by ensuring that government investigations and judicial proceedings, including all communications by employees to the Secretary, are free from witness intimidation.

Here, the balance of interests tips sharply in favor of the Secretary.  Allowing Defendants to continue flouting the FLSA's protections by threatening employees who are perceived to be cooperating with the Secretary will deter the Defendants' employees from communicating with the Secretary and thereby irreparably harm the Secretary's investigation and future enforcement

efforts.  If Defendants are not enjoined and their threats are carried out, employees will suffer the irreparable harm of termination at the hands of Defendants.  By contrast, if the Court grants the requested relief to the Secretary, the Defendants would bear only the minimal burden of ceasing their interference with the Secretary's investigation.  29 U.S.C. §§ 211(a) and 215(c)(3).

Thus the Secretary respectfully requests the Court enter an order enjoining Defendants from threatening, retaliating against, and/or otherwise harming current and former employees of the Company in any manner.  To further protect the rights of employees, the Secretary additionally requests that Defendants be required to permit the Wage and Hour Division to inform employees of their rights under the FLSA.

## I.    BACKGROUND

On July 9, 2014, Wage and Hour's Atlanta District Office initiated an investigation of Gio's Chicken Amalfitano located at 1099 Hemphill Avenue, NW, Atlanta, Georgia 30318 to determine its compliance with the FLSA.  *See* Ashley Swopes Affidavit (hereinafter "Swopes Aff."), ¶¶ 1, 4 and Andrew T. Vissman Affidavit (hereinafter "Vissman Aff."), ¶¶ 1,4.  Wage and Hour Investigators (WHIs) Ashley Swopes and Andrew Vissman are assigned to this investigation.  Swopes Aff. at ¶ 4, Vissman Aff. at ¶ 4.  The investigation has revealed that Gio's Chicken Amalfitano is part of one enterprise owned and operated by Defendant Company and Defendant DiPalma.  Swopes Aff. at ¶ 5, Vissman Aff. at ¶ 5. The Company is comprised of five adjoining businesses (hereinafter "the worksite"):  Gio's Chicken Amalfitano, Antico's Pizza Napoletana, Bottega Luisa, Caffe Gio, and Bar Amalfi.  Swopes Aff. at ¶ 5, Vissman Aff. at ¶ 5. Employees work interchangeably among these five establishments.  Swopes Aff. at ¶ 5, Vissman Aff. at ¶ 5.  On information and belief, Defendant DiPalma runs the Company, hires and fires employees, establishes employees' rates of pay, directs employees' work, disciplines employees, and maintains the employment records.  Swopes Aff. at ¶¶ 6, 10, Vissman Aff. at ¶ 9.  Wage and

3

Hour's ongoing investigation includes, but is not limited to, requesting payroll records, time sheets, company policies and interviewing current and former employees of the Company. Swopes Aff. at ¶ 9, Vissman Aff. at ¶ 8.

Based on the limited information Wage and Hour has been able to gather in its investigation to date, workers have worked in excess of 60 hours per week.  Vissman Aff. at ¶ 10.  Defendant DiPalma told WHIs Swopes and Vissman that workers do not receive an additional halftime premium for hours worked in excess of 40 hours per week.  Swopes Aff. at ¶ 8, Vissman Aff. at ¶ 8.  During the initial conference, WHIs Swopes and Vissman provided Defendant DiPalma with a copy of the FLSA Handy Reference Guide that informed him that "it is a violation to fire or in any other manner discriminate against an employee for filing a complaint or for participating in a legal proceeding under the FLSA."  Swopes Aff. at ¶ 8, Vissman Aff. at ¶ 8.

Employees have told WHIs Swopes and Vissman that Defendant DiPalma has terminated and attempted to coach, coerce, and/or threaten employees due to their investigation.  Swopes Aff. at ¶ 12, Vissman Aff. at ¶ 12.  Employees reported that Defendant DiPalma had instructed them to provide false information to Wage and Hour.  Swopes Aff. at ¶¶ 12(b), 12(c), Vissman Aff. at ¶¶ 12(b), 12(c).  Specifically, employees told the WHIs that Defendant DiPalma told them to tell Wage and Hour that they worked fewer hours than they actually worked per week and to lie and say that they did not work for the Company or Defendant DiPalma.  Swopes Aff. at ¶¶ 12(b), 12(c), Vissman Aff. at ¶¶ 12(b), 12(c). Employees stated that Defendant DiPalma instructed them to make these statements even though they are untrue and that some of them later admitted to lying to Wage and Hour because they feared losing their employment.  Swopes Aff. at ¶¶ 12(b), 12(c), Vissman Aff. at ¶¶ 12(b), 12(c).

4

Similarly, Defendant DiPalma told employees to leave the place of business while WHIs Swopes and Vissman were at the worksite because he did want Wage and Hour to know that those individuals were his employees.  Swopes Aff. at ¶ 12(a), Vissman Aff. at ¶ 12(a).  Some employees obeyed Mr. DiPalma and left the premises while WHIs Swope and Vissman were at the worksite conducting interviews.  Swopes Aff. at ¶ 12(a), Vissman Aff. at ¶ 12(a).  Defendant DiPalma told employees that he "has people" within the Department of Labor and knows when they speak with Wage and Hour and what they tell WHIs Swopes and Vissman.  Swopes Aff. at ¶ 12(g), Vissman Aff. at ¶ 12 (g).

Employees also explained that after the investigation began, Defendant DiPalma began treating some employees differently than the other employees at the worksite.  Swopes Aff. at ¶ 11, Vissman Aff. at ¶ 11.  These employees explained that they no longer received a share of the "employer-generated tips" and that they were now paid later than other employees.  Swopes Aff. at ¶ 11, Vissman Aff. at ¶ 11.They believed they were being treated differently because Defendant DiPalma believed they were cooperating in the Wage and Hour investigation. Swopes Aff. at ¶ 11, Vissman Aff. at ¶ 11.

Of greatest concern, employees believe that Defendant DiPalma terminated employees in August 2014 because he believed those employees spoke with Wage and Hour.  Swopes Aff. at ¶ 14, Vissman Aff. at ¶ 13.  In fact, Defendant DiPalma publicly accused an employee of calling the Department of Labor and challenged the employee to call the Department of Labor in front of him.  Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e).  Several of the employee's co-workers heard the accusation and Defendant DiPalma's challenge for her to call the Department of Labor in front of him.  Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e).  Later that day, when that employee sought to discuss that accusation, Defendant DiPalma dragged her from the premises

by her arm and threatened to deport her and her family.  Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e).  That same day, Defendant DiPalma terminated her and her family members' employment.  Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e).  As a result, employees have expressed that they are afraid and intimidated by Defendant DiPalma's actions and threats, and fear they will be fired and/or physically harmed for cooperating with Wage and Hour's investigation.  Swopes Aff. at ¶ 15, Vissman Aff. at ¶ 14.  Further, Defendant has threatened to call immigration authorities concerning former employees whose family members Defendant DiPalma accused of calling the Department of Labor, as well as those employees that he accused of calling the Department of Labor themselves.  Swopes Aff. at ¶ 12(f), Vissman Aff. at ¶ 12(f).  Moreover, Defendant DiPalma intimidates employees from speaking with Wage and Hour due to statements he makes in their presence which the employees have interpreted as Defendant DiPalma being above the law.  Swopes Aff. at ¶ 13.

Defendants' instructions for employees to provide false information to Wage and Hour, Defendants' orders that employees hide from Wage and Hour, and Defendants' termination of employees accused of calling Wage and Hour clearly constitute unlawful retaliation designed to chill cooperation with the government and undermine the Secretary's ability to enforce the FLSA.

## II.     LEGAL AUTHORITY

### A.     Jurisdiction

Jurisdiction of this action is conferred upon the Court by Section 17 of the FLSA, 29 U.S.C. § 217 (injunction proceedings), and by 28 U.S.C. § 1345 (proceedings commenced by the United States).

6

**B.     A Temporary Restraining Order Should be Issued Restraining Defendants from Further Retaliation.**

The temporary restraining order ("TRO") sought by the Secretary is an extraordinary request forced by Defendants' serious and alarming actions and threats of retaliation against employees who have participated or who would like to participate in the ongoing Wage and Hour investigation of the Company.

To be entitled to a temporary restraining order, a plaintiff must meet a four-part test:  (1) a substantial likelihood of success on the merits of his claim; (2) irreparable harm would occur absent the injunction; (3) the harm suffered by the Plaintiff from a denial of the injunction outweighs the harm suffered by the Defendant if the injunction were issued; and (4) no adverse effect to the public interest.  *Tillman v. Miller*, 917 F. Supp. 799, 800 (N.D. Ga. 1995) *citing Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989); Fed.R.Civ.P. 65; *see also Clincy v. Galardi South Enterprises, Inc.*, 2009 WL 2913208 (N.D. Ga. 2009) (granting a temporary restraining order where an employer told employees they were being terminated for filing a lawsuit under the FLSA, which was a "flagrant violation of the FLSA's anti-retaliation provision"); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (discussing standard for preliminary injunction); *Johnson & Johnson Vision Care v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002) (discussing standard for preliminary injunction); *United States v. Alabama*, 791 F.2d 1450, 1459 n. 10 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085 (1987).

As set forth below, these circumstances plainly satisfy this test.

1.      *The Secretary is Likely to Succeed on the Merits of a Retaliation Claim.*

The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), is a critical element in the enforcement scheme of the FLSA.  *See e.g., Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).  Under the anti-retaliation provision, found at Section 15(a)(3) of the FLSA, it is:

> unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or related to this chapter, or has testified or is about to testify in any such proceeding…

29 U.S.C. § 215(a)(3).  "Unchecked retaliation, no matter what form, subverts the purpose of the FLSA."  *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010); *see also Clincy v. Galardi South Enterprises, Inc.*, 2009 WL 2913208 (N.D. Ga. 2009); *Centeno Burnuy v. Perry*, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003), *citing Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir. 1985).

As explained by the Supreme Court, the FLSA's antiretaliaion provision encourages workers to vindicate their rights by sharing information concerning violative conditions:

> The Act seeks to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of the workers.  29 U.S.C. § 202(a).  It does so in part by setting forth substantive wage, hour, and overtime standards.  It relies for enforcement of these standards, not upon "continuing detailed federal supervision or inspection of payrolls," but upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied." *(citation omitted)*.  And its antiretaliaion provision makes this enforcement scheme effective by preventing "fear of economic retaliation" from inducing workers "quietly to accept substandard conditions."

*Kasten v. Saint-Gobain Performance Plastics, Corp.*, 131 S. Ct. 1325, 1333 (2011) (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).  In light of these objectives, the Supreme Court has consistently held that the FLSA "must not be interpreted or

applied in a narrow, grudging manner." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).

In order to prove a violation of Section 215(a)(3) the Secretary must make a *prima facie* showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-3 (11th Cir. 2000); *Raspanti v. Four Amigos Travel*, 266 Fed. Appx. 820, 822 (11th Cir. 2008); *Henderson v. City of Grantville, Georgia*, 2014 WL 3956107, *2, (N.D.Ga. 2014); *Harmon v. Elkins Wrecker Service*, 2013 WL 2457957, *7 (N.D.Ga. 2013); *Thrower v. Peach County, Georgia, Bd. of Educ.*, 2010 WL 4536997 (M.D. Ga. 2010). If the Secretary meets this burden, the Defendants must then articulate a legitimate, non-discriminatory reason for their actions. *Wolf,* 200 F.3d at 1343. The burden then shifts to the Secretary to demonstrate that the Defendants' proffered reason is a pretext for discrimination. *Id*.

Here, the Secretary meets all three required elements to make his *prima facie* showing of retaliation and will further demonstrate that these unlawful acts of intimidation and threats will continue without relief from this Court.

a.      *Protected Activity*

The FLSA prohibits retaliation against an employee who files a complaint, initiates proceedings, or assists in the initiation of proceedings under the FLSA. 29 U.S.C. § 215(a)(3). An employee engages in protected activity when she participates in conduct that reasonably could be perceived as directed toward the assertion of rights protected by the statute. *Kasten,* 131 S.Ct. at 1335. The FLSA's anti-retaliation provision should be broadly interpreted to promote its remedial purpose. *Kasten*, 131 S. Ct. at 1134; *EEOC v. White & Son Enter.,* 881 F.2d 1006, 1011-12 (11th Cir. 1989). Employees providing information to the United States

Department of Labor in an investigation constitutes protected activity.  *See Robinson v. Zions Securities Corp.*, 2010 WL 2756967 (D. Utah 2010) .

Further, an employee does not actually have to have filed a complaint to be protected.  If an employer retaliates because the employer "erroneously believed" the employee engaged in protected conduct, such retaliation would still violate the Act.  *See Brock v. Richardson*, 812 F.2d 121, 124–25 (3d Cir.1987) (a retaliatory firing based on an employer's belief that an employee had filed a complaint even when he had not is prohibited by § 215(a)(3)); *Saffels v. Rice*, 40 F.3d 1546, 1549-1550 (8th Cir.1994); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002).  Moreover, a threat of retaliation is as much a basis for injunctive relief as the retaliatory act being threatened.  *See United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952) ("All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to occur").

Defendant DiPalma retaliated against employees whom he accused of engaging in protected activity in a number of ways.  Significantly, Defendant DiPalma terminated an employee the same day that he publicly accused her of calling the Department of Labor and challenged her to call the Department of Labor in front of him.  Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e).  Additionally, Defendant DiPalma threatened to call immigration authorities concerning employees whom he believed called the Department of Labor, as well as their family members.  Swopes Aff. at ¶ 12(f), Vissman Aff. at ¶ 12(f).  He also penalized those employees that he believed participated in the Wage and Hour investigation by paying them later and excluding them from the "employer-generated tips."  Swopes Aff. at ¶ 11, Vissman Aff. at ¶ 11.  Calling the Department of Labor and speaking with Wage and Hour investigators conducting their investigation clearly constitute protected activity sufficient to trigger the anti-retaliation

protections of the FLSA.  Regardless of whether these employees actually called the Department of Labor or spoke with Wage and Hour investigators, the employer's belief that the employees had engaged in protected activity bring his actions under the purview of the FLSA.  See *Brock v. Richardson*, 812 F.2d 121, 124-125 (3rd Cir. 1989) (holding that an employer's belief that an employee engaged in protected activity is sufficient to bring the employer's action under § 15(a)(3) "because the discharge of an employee in the mistaken belief that the employee has engaged in protected activity creates the same atmosphere of intimidation as does the discharge of an employee who did in fact complain of FLSA violations").

    *b.  Adverse Action*

   The U.S. Supreme Court has made clear that retaliation "is not limited to [adverse employment actions] that affect the terms and conditions of employments." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006).   Rather, an employment action is cognizable as adverse when it is reasonably likely to deter employees from engaging in protected activity. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Poole v. City of Plantation, Fla.*, 2010 WL 4063728 (S.D. Fla. 2010) (holding as adverse various actions against various employees, including suspension, frivolous criminal investigation, frequent transfers to other shifts, denial of overtime, and physical threats); *Crayton v. Valued Services of Alabama, LLC*, 2010 WL 3522407 (M.D. Ala. 2010) (adverse actions against a store manager, including failure to respond, or to respond timely, for requests for assistance at her store; demotion; repeated and unwarranted audits of her store; and threatened termination); *Ramos v. Hoyle*, 2009 WL 2849093 (S.D. Fla. 2009) (filing of a counterclaim to an employee's FLSA action).   Former employees

are also protected from retaliatory acts after they have voluntarily left the defendant's employ. *See Phillips v. M.I. Quality Lawn Maintenance, Inc.*, 2010 WL 4237619 (S.D. Fla. 2010).

Here, Defendant DiPalma's actions have surpassed *threats* of retaliation. Defendant DiPalma has *actually retaliated* against employees by decreasing their pay and terminating the employment of those he accused of calling the Department of Labor. Swopes Aff. at ¶¶ 11, 12(e), Vissman Aff. at ¶ ¶11, 12(e). Defendant DiPalma humiliated an employee by accusing her of calling the Department of Labor and challenging her to call the Department of Labor in front of him in front of her co-workers. Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ ¶12(e). Additionally, Defendant DiPalma threatened current and former employees with a number of consequences for speaking with the Secretary –termination and deportation – all of which clearly constitute adverse actions within the meaning of the FLSA's anti-retaliation provision. Moreover, threats of retaliation, like those made by Defendants, are as much a basis for injunctive relief as past retaliatory acts. *See United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952) ("All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to occur."); *see also Solis v. SCA Restaurant Corp.*, 938 F. Supp. 2d 380, 399 (E.D.N.Y. 2013) (threat of termination is adverse action under FLSA anti-retaliation provision).

c.     Causation

A causal connection may be demonstrated by direct as well as circumstantial evidence. *Perez v. Renaissance Arts and Educ., Inc., 2013 WL 5487097, at *2 (M.D. Fla.* 2013)(discussing similar provision under the Occupation Safety and Health Act)(citing *Reich v. Hoy Shoe, Inc*, 32 F.3d 361, 365, n. 4 (8th Cir. 1994). For purposes of an FLSA retaliatory discharge claim, the causal connection requirement means that the plaintiff must prove that the adverse action would

not have been taken "but for" the assertion of the FLSA rights. *Wolf v. Coca-Cola,* 200 F.3d 1337, 1342-3 (11th Cir. 2000); *Reich v. Davis,* 50 F.3d 962, 965-6 (11th Cir. 1995); *Thrower v. Peach County, Georgia, Bd. of Educ.*, 2010 WL 4536997 (M.D. Ga. 2010). To support the causal connection between the plaintiff's protected activity and the adverse action taken against him or her, the plaintiff may show that the adverse action closely followed the protected activity. *Poole v. City of Plantation, Fla.*, 2010 WL 4063728 (S.D. Fla. 2010) (finding causal connection in a series of events occurring over a period of approximately three months).

Here, there can be little doubt that Defendant DiPalma's threats of retaliation and other intimidation of employees are in response to Defendant DiPalma's belief that his employees engaged in the protected activities of filing complaints with the Secretary and providing information in the Secretary's ongoing investigation. Indeed, Defendant DiPalma accused an employee of calling the Department of Labor and challenged her to call in front of him and several other employees the same day that he terminated her employment. Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e). He additionally told other employees that he would call immigration authorities concerning that employee and her family members. Swopes Aff. at ¶ 12(e), Vissman Aff. at ¶ 12(e). Employees believe that Defendant DiPalma has terminated employees because they cooperated with the Department of Labor. Swopes Aff. at ¶ 14, Vissman Aff. at ¶ 14. This is precisely the type of intimidation that the FLSA's anti-retaliation provision was designed to prevent.

### d.    Pretext

Finally, it is very unlikely that Defendants will be able to show a legitimate, non-discriminatory reason for their harassing and intimidating conduct, especially in light of their actions to provide false and misleading information to Wage and Hour. On the other hand, the

Secretary is likely to prevail in showing that Defendant DiPalma has violated Section 11(a) of the FLSA by prohibiting his employees from communicating with Wage and Hour. Section 11 of the FLSA empowers the Secretary to:

> investigate…the wages, hours,…and practices of employment[,]…enter and inspect such places[,]…question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA]….the Secretary shall bring all actions under section 17 to restrain violations of this chapter.

29 U.S.C. § 211(a).  The FLSA grants the Secretary these investigatory powers because the statute "relies for enforcement…, not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'"  *Kasten*, 131 S. Ct. at 1333.  Here, Defendants have plainly violated the FLSA's investigatory provision by directing their employees to provide the Secretary's investigators with false information regarding whether they worked for Defendants, the hours worked, and to hide from the investigators.  Such instructions have especially hampered the Secretary's ability to determine the extent of any FLSA violations, because the Secretary must speak with the employees to determine for whom the employees worked and the hours they worked. *See Kasten*, 131 S. Ct. at 1333 (enforcement of the FLSA depends upon workers to provide information).

Defendants' instructions to provide false information combined with Defendants' concurrent threats against employees who cooperate or are perceived to cooperate with the Secretary's investigation has caused these workers to rightfully fear continued retaliation if they speak truthfully to the Secretary.  Defendant DiPalma's accusation that an employee called the Department of Labor and his challenge that she call the Department of Labor in front of him was

witnessed by several employees.  These employees are understandably intimidated and believe

that they too will be terminated if they cooperate with the Wage and Hour investigation.

Swopes, Vissman.  Employees have told Wage and Hour that they believe they would be fired or

physically harmed if Defendant DiPalma found out that they had spoken with the Secretary.

Swopes Aff. at ¶ 15, Vissman Aff. at ¶ 14. Employees have confirmed that some employees have

hid from Wage and Hour Investigators and lied to Wage and Hour investigators about their hours

because they feared losing their employment.  Swopes Aff. at ¶¶ 12(a), 12(b), Vissman Aff. at ¶¶

12(a), 12(b).  It is critical that the Court stop the Defendants' interference because, as stated by

the Supreme Court in *Kasten*, the Secretary needs to be able to interview workers to enforce the

FLSA.  *Kasten*, 131 S. Ct. at 1333.  The Secretary depends on honest, forthright information

from employees to enforce the FLSA.

Section 11(a) directs the Secretary to seek injunctive relief to stop any employer who

impedes the Secretary's investigation, and the Secretary is likely to succeed in such an action due

to the Defendants' brazen obstruction.  29 U.S.C. §§ 211(a), 217.

> 2.   *The Secretary and Defendants' Current and Former Employees Will*
>      *Continue to Suffer Irreparable Harm Absent a Temporary Restraining*
>      *Order.*

The protections afforded by the FLSA, including minimum wage and overtime

guarantees, can only be effective if the anti-retaliation provision is strongly enforced.  As the

Supreme Court has explained, "effective enforcement [of the FLSA] . . . could only be expected

if employees felt free to approach officials with their grievances . . . [I]t needs no argument to

show that fear of economic retaliation might often operate to induce aggrieved employees to

quietly accept substandard conditions."  *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288,

335 (1960); *see also Centeno-Burnuy v. Perry*, 302 F. Supp. 2d 128, 137 (W.D.N.Y. 2003)

("Unchecked retaliation, no matter its form, subverts the purpose of the FLSA").  The deterrent effect on workers prevents the Secretary from exercising his authority to investigate by limiting the Secretary's ability to interview workers and learn of potential FLSA violations.  *Clincy v. Galardi South Enterprises, Inc.*, 2009 WL 2913208 (N.D. Ga. 200) ("The anti-retaliation provision of the FLSA is intended to allow employees to seek vindication of their statutory rights without the fear of reprisal.").  Retaliatory termination also carries with it the risk that other similarly situated employees will be deterred from protecting their own rights.

Irreparable harm is particularly likely to result in this case.  Defendant DiPalma's threats to the Company's current and former employees has already succeeded in forcing employees to lie to or hide from the Department of Labor in order to keep their employment.  Swopes Aff. at ¶¶ 12(a), 12(b), Vissman Aff. at ¶¶ 12(a), 12(b).  Forcing individuals with claims under the FLSA to choose between pursuing their claims or maintaining their employment results in irreparable harm.  *Clincy v. Galardi South Enterprises, Inc.*, 2009 WL 2913208 (N.D. Ga. 2009) (finding irreparable harm where employees were put in the position of either being terminated or pursuing their FLSA claims); *see also Allen v. Suntrust Banks, Inc.*, 549 F. Supp. 2d 1379 (N.D. Ga. 2008) (finding irreparable harm where employees were put in a position of either obtaining a severance package or pursuing their FLSA claims).  Should these threats continue to be allowed unchecked, the Secretary's ability to enforce the provisions of the FLSA will be seriously compromised.  In conducting investigations into employers' wage and hour practices, the Secretary of Labor relies on the testimony of workers.  Without assurances that employees who cooperate with the government are protected from retaliation, the Secretary cannot effectively enforce the law.  Defendants' conduct directly interferes with the Secretary's enforcement powers in its ongoing investigation.

16

It is well-established that an employer's retaliatory acts can irreparably harm employees, particularly where those acts deter potential complainants or witnesses from coming forward to challenge the employer's illegal conduct. *See Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) ("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their own rights . . . or from providing testimony for the plaintiff in her effort to protect her own rights.  These risks may be found to constitute irreparable injury."); *Bonds v. Heyman*, 950 F. Supp. 1202, 1214-15 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 546 U.S. 101, 105 (2002) ("[A] plaintiff who demonstrates that an adverse personnel action is likely to have a chilling effect on other employees who, after witnessing their fellow co-worker's discharge or dismissal, would now refuse to file claims in fear of reprisals, would also meet [the irreparable injury standard]"); *see also Carrillo v. Schneider Logistics, Inc.,* 2012 WL 556309 (C.D. Cal. 2012) ("courts routinely recognize that retaliatory discharges deter workers from vindicating their statutory rights and seeking access to courts, and that these injuries constitute irreparable harm").

The current and former employees are likely to suffer irreparable harm in this case if Defendants are not enjoined from terminating, threatening to terminate, harming, or threatening to harm employees.  Defendant DiPalma humiliated an employee in front of her co-workers by accusing her of calling the Department of Labor and challenging her to call the Department of Labor in front of him.  Swopes Aff. at ¶ 12 (e), Vissman Aff. at ¶ 12(e).  Witnessing this scene has understandably intimidated employees at the Defendants' establishment, who fear that they too will be terminated for cooperating with the Department of Labor's investigation.  Swopes Aff. at ¶¶ 14, 15, Vissman Aff. at ¶¶ 13, 14. Additionally, Defendant DiPalma has told employees that he "has people" within the Department of Labor and knows when they speak to

Wage and Hour investigators and what they tell to Wage and Hour investigators.  Swopes Aff. at ¶12(g), Vissman Aff. at ¶12(g).  These statements have already had a chilling effect on the Defendants' employees.  Employees have already lied to and hid from investigators in order to keep their jobs.  Allowing Defendants to continue these threats and retaliatory actions will further chill cooperation with the Secretary's investigation and prevent employees from asserting their rights under the FLSA.  Based on these threats, employees will continue to be fearful of losing their jobs or worse if Defendants continue their threatening and retaliatory conduct.

> 3.     *Without an Order Enjoining Further Actions and Threats by Defendants, the Irreparable Harm Suffered by the Secretary and Defendants' Current and Former Employees Will Exceed Any Potential Harm Suffered by the Defendants if an Order Enjoining Defendants is Issued.*

The employees' "fear of economic retaliation" is inducing them "to quietly accept substandard conditions."  *Kasten*, 131 S. Ct. at 1333 (quoting *Robert DeMario Jewelry*, 361 U.S. at 292).  Without assurances from the Court that witnesses who cooperate with the government are protected from retaliation, the Secretary cannot effectively enforce the law in this case, violating the investigative provision of the FLSA and hampering other current and future investigations by the Secretary in this community.  The "resulting weakened enforcement of the FLSA" directly interferes with and irreparably harms the Secretary's enforcement powers.  *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010).  If this Court does not enter the relief sought, Defendant DiPalma will continue to threaten and intimidate potential complainants and witnesses, preventing the Secretary from exercising his authority under Section 11 to determine the full scope of Defendants' violations of FLSA, and harming the Secretary's future investigations.

4.      *The Balance of Equities Tilts Sharply in the Secretary's Favor and an Injunction is in the Public Interest.*

In balancing the hardship that may result from the issuance of an injunction, the public interest is entitled to great consideration.  The balance of equities tilts sharply in the Secretary's favor, and entering the temporary restraining order is in the public interest.  *See Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 657-58 (9th Cir. 2009).  Defendants have no legitimate interest in preventing the Secretary from exercising his investigative authority granted by Section 11 of the FLSA.  Further, Defendants have no legitimate interest in the termination or continued harassment of current or former employees in retaliation for those workers engaging in protected activities of filing complaints with the Department of Labor and/or providing statements to Wage and Hour investigators.  Moreover, the Secretary only requests that Defendants be required to comply with the law and that the employees be informed of their protected rights under the FLSA.  *Perez v. Fatima/Zahra, Inc.*, 2014 WL 2854812 (N.D. Cal. 2014).

Restraining Defendants from engaging in harassing and retaliatory contact toward their current and former employees pending the outcome of the Wage and Hour investigation and any ensuing litigation will ensure that Defendants comply with the FLSA's anti-retaliation provision and ensure that vulnerable employees are able to participate without fear of termination or other harm.   Similarly, the posting of a Notice of Rights and the subsequent reading of that Notice to employees will assist in reducing the hostile environment and the employees' current level of fear of retaliation.  Defendants' employees believe that he is above the law because he has stated that he has powerful friends like President Obama and that he will not lose.  Swopes Aff. at ¶ 13. These statements, along with Defendant DiPalma's claim that he "has people" within the Department of Labor, understandably gives employees the impression that Wage and Hour

19

cannot effectively protect their rights under the FLSA at this worksite.  The reading of the public Notice of Rights corrects this misinformation by informing employees that they are protected by the FLSA, they have a right to freely participate in the investigation, and that any threats or retaliation based upon that participation is unlawful.

The hardship to the Defendants is negligible, as the Secretary merely seeks to maintain the status quo and ensure that these workers are allowed to testify at trial free from retaliatory discharge.  Enjoining Defendants is necessary to further public policy, and poses no hardship to the Defendants.  See, e.g., *Aguilar v. Baine Service Systems, Inc.*, 538 F. Supp. 581, 585 (S.D.N.Y. 1982) (ordering employer to reinstate employee, holding that "[o]n the one hand, if an injunction is not forthcoming, plaintiffs lose their livelihood and sole financial means" and that "if an injunction does issue, defendants will merely be required to retain the plaintiffs in their current employ").  The facts of this case clearly warrant injunctive relief.

## III.   CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court enter a Temporary Restraining Order giving full and fair notice to employees that this Court will not permit any retaliation suffered at the hands of the Defendants to continue.  The Secretary asks the Court to grant his motion and:

1.   Enjoin Defendants from terminating or threatening to terminate, causing any employee to be deported or threatening to cause any employee to be deported, or retaliating or discriminating in any way against current and former employees of Antico Foods, LLC based on Defendants' belief that an employee spoke with or intends to speak with a Department of Labor Wage and Hour investigator, filed a complaint with the Department of Labor, or cooperated in any way in the Wage and Hour investigation currently being conducted of Antico Foods, LLC;

2.   Enjoin Defendants from telling anyone who works for them not to speak to representatives of the Department of Labor or to provide false information to the Department of Labor or otherwise coerce employees to make false statements regarding the terms and conditions of their employment;

3.      Enjoin Defendants from obstructing the Secretary's investigation in any manner;

4.      Require Defendants to permit a designee of the Secretary to read the following statement aloud in English and Spanish, to all employees of Antico Foods, LLC during paid work hours informing them of their right to speak, without retaliation or threats of retaliation or intimidation, with Wage and Hour investigators regarding the instant investigation:

> You are protected by the Fair Labor Standards Act and have the right to participate freely in the U.S. Department of Labor's investigation into your employer's pay practices. You have the right to speak freely with investigators or other officials from the Department of Labor. Your employer is prohibited from retaliating against you in any way, including termination, because you spoke with the Department of Labor.

> The U.S. District Court for the Northern District of Georgia has ordered Giovanni DiPalma, and anyone acting on his behalf, to cease coercing, retaliating against, threatening to retaliate against, intimidating, or attempting to influence or in any way threatening employees for providing information to the Department of Labor. The Court has prohibited Giovanni DiPalma from contacting or communicating with employees of Antico Foods concerning any communication between employees and the Department of Labor.

> *Usted está protegido por la Ley de Normas Justas de Trabajo y tiene el derecho de participar libremente en la investigación del Departamento de Trabajo sobre las prácticas de pago por parte de su patrono. Usted tiene el derecho de hablar libremente con investigadores u otras personas del Departamento de Trabajo. Su empleador está prohibido de hacer represalias contra de usted de cualquier manera incluyendo la terminación de usted, porque usted habló con el Departamento de Trabajo.*

> *El Tribunal Federal de Distrito Norte de Georgia ha ordenado que Giovanni diPalma, y cualquier persona que actúe en el nombre de él, cesen coerción ,tomar represalias en contra, amenazar con tomar represalias en contra, intimidación, intentar influir o amenazar de cualquier manera los empleados por dar información al Departamento de Trabajo. El Tribunal ha prohibido que la señor DiPalma contacte o comunique con empleados de Antico Foods acerca de cualquier comunicación entre ellos y el Departamento de Trabajo.*

5.      Require Defendants to post at each Antico Foods, LLC worksite a hard copy of the statement referred to in ¶ 4 above, in both English and Spanish;

6.      Prohibit Defendants from speaking directly to employees of Antico Foods, LLC either directly or through another person acting on his behalf, regarding any

communication any employee has or will have with the Secretary about the pending investigation by Wage and Hour;

7.     Provide for costs and expenses to reimburse the Secretary in maintaining this application; and

8.     Order all such other relief as may be appropriate, just, and proper.

Respectfully submitted,

ADDRESS:                                          M. PATRICIA SMITH
                                                  Solicitor of Labor

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.                           STANLEY E. KEEN
Room 7T10                                         Regional Solicitor
Atlanta, GA  30303
                                                  ROBERT L. WALTER
                                                  Counsel
Telephone:
 (678) 237-0613
 (404) 302-5438 (FAX)                             By:/s/ Kristin R.Murphy
Email:                                               KRISTIN R. MURPHY
murphy.kristin.r@dol.gov                             Attorney
ATL.FEDCOURT@dol.gov                                 Office of the Solicitor
                                                     U. S. Department of Labor
SOL Case No. 14-00772                                Attorneys for Plaintiff.