UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS E. PEREZ,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>ANTICO FOODS, LLC, and<br>GIOVANNI DIPALMA,<br><br>Respondent. | FILE NO. _____ |

AFFIDAVIT OF ANDREW T. VISSMAN

COUNTY OF FULTON

STATE OF GEORGIA

I, ANDREW T. VISSMAN, am over 18 years of age, legally competent to give this affidavit and have personal knowledge of the facts set forth in this affidavit and being first duly sworn, do hereby state:

1. I am a Wage Hour Investigator ("WHI") employed by the Atlanta District Office Wage and Hour Division, United States Department of Labor ("Wage Hour") and in that capacity I conduct investigations to determine if an employer is in compliance with the Fair Labor Standards Act of 1938, as amended ("the FLSA"), 29 U.S.C. §§ 201, et seq.

2. I have been a WHI since September 2009.

3. I am fluent in English and Spanish.

4. In the course of performing my official duties, Wage and Hour Investigator Ashley Swopes and I were directed by District Director Eric Williams to conduct an investigation

1

of Gio's Chicken Amalfitano located at 1099 Hemphill Avenue NW, Atlanta, Georgia 30318 to determine its compliance with the FLSA.

5. Our investigation determined that Gio's Chicken Amalfitano is part of one enterprise owned and operated by Antico Foods, LLC ("Company") and Giovanni DiPalma. Antico Foods, LLC is comprised of five adjoining businesses ("the worksite"): Gio's Chicken Amalfitano, Antico's Pizza Napoletana, Bottega Luisa, Caffe Gio, and Bar Amalfi. Employees work interchangeably among these establishments.

6. On July 9, 2014, in my official capacity, I went to the worksite to initiate an investigation of the Company, whose operations include receiving food and supplies from Italy and states throughout the United States.

7. I was present for the initial conference with Mr. DiPalma on August 15, 2014. During this conference, Mr. DiPalma explained that workers do not receive an additional halftime premium for hours worked in excess of 40 hours per week. At the end of this conference, Mr. DiPalma was given a copy of the FLSA Handy Reference Guide. The Guide states that "it is a violation to fire or in any other manner discriminate against an employee for filing a complaint or for participating in a legal proceeding under the FLSA."

8. WH's ongoing investigation includes, but is not limited to, requesting payroll records, time sheets, company policies and interviewing current and former employees of the Company in order to determine whether FLSA regulations regarding minimum wage and overtime were violated.

9. Based on my interviews with employees and communications with Mr. DiPalma, I determined that Mr. DiPalma runs the Company, hires and fires employees, directs employees'

work, establishes their rates of pay, disciplines employees, and is responsible for maintaining employment records.

10. Employees stated that they regularly worked over 60 hours per week and receive no additional halftime premium for hours worked in excess of 40 hours per week.

11. Employees explained that after the Wage and Hour initiated its investigation on July 9, 2014, Mr. DiPalma began to treat some employees differently than the other employees at the worksite. These employees explained that they no longer received a share of the "employer-generated tips." These employees told me that they believed Mr. DiPalma treated them differently because he believed they were cooperating in the WH investigation.

12. During employee interviews, employees discussed matters with me that were within the scope of their employment. At the time I interviewed them, they were current employees of Mr. DiPalma and the Company. The employees made the following statements:

    a) Mr. DiPalma told employees to leave the place of business while the Department of Labor was onsite because Mr. DiPalma did not want the Department of Labor to know that those individuals were his employees. Those employees obeyed Mr. DiPalma and left the premises while WHI Ashley Swopes and I were onsite conducting the investigation.

    b) Mr. DiPalma instructed employees to tell WHIs during any interviews that they worked fewer hours than they actually worked per week. Those employees obeyed Mr. DiPalma and lied to me about the hours they worked because they feared losing their employment.

    c) Mr. DiPalma told employees to lie about who their employer was and to tell WHIs that they did not work for Mr. DiPalma or the Company.

d) Mr. DiPalma told employees to instruct other employees to lie about the number of hours they worked

e) On August 30, 2014, Mr. DiPalma publicly accused an employee of calling the Department of Labor and challenged the employee to call the Department of Labor in front of him. Several of the employee's co-workers heard the accusation and Mr. DiPalma's challenge for her to call the Department of Labor in front of him. Later that day, when that employee sought to discuss that accusation, Mr. DiPalma dragged her from the premises by her arm and threatened to deport her and her family. That same day, Mr. DiPalma terminated that employee and her family members.

f) Mr. DiPalma told employees that he would call immigration authorities concerning former employees that Mr. DiPalma accused of calling the Department of Labor.

g) Mr. DiPalma told employees that he "has people" within the Department of Labor and knows when they speak with Wage and Hour investigators and what they tell Wage and Hour investigators.

13. Employees stated that they believe that Mr. DiPalma terminated employees because he believed those employees spoke with the Department of Labor.

14. The employees I interviewed are afraid and intimidated by Mr. DiPalma's threats and fear they will be fired for cooperating with Wage Hour's investigation.

15. The current employees are afraid about their identities and statements being revealed and requested that I keep their names and statements confidential. In light of the threats the employees have received, none of the current employees referenced in this Affidavit are

willing, at this time, to come forward. However, they have been informed that they may have to testify at any trial in this matter.

_[signature]_
ANDREW T. VISSMAN
Wage & Hour Investigator
U.S. Department of Labor
233 Peachtree St NE
Suite 650
Harris Tower
Atlanta, GA 30303

Sworn and subscribed to before me
This 25 day of September, 2014.

_[signature: Kimberly A Dennison]_
NOTARY PUBLIC
My commission Expires 11/14/2017

_[Notary seal: Kimberley Dennison, Notary Public, Cobb County, Georgia, Comm. Exp. 11/14/2017]_